**Electronically Filed
Intermediate Court of Appeals
CAAP-11-0001050
20-DEC-2012
10:13 AM**

NO. CAAP-11-0001050

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

IN THE INTEREST OF KB[1]

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 07-11642)

SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., Fujise and Reifurth, JJ.)

Appellant Father ("Father") appeals from the Order
Terminating Parental Rights ("Order"), filed on December 5, 2011
in the Family Court of the First Circuit ("Family Court").[2]
More than four years after Appellee State of Hawai'i Department
of Human Services ("DHS") first filed a Petition for Foster Care
Custody over Mother and Father's daughter ("KB"), the Order
terminated Mother and Father's parental rights and awarded
permanent custody of KB, who was six years old at the time, to
DHS.  Mother did not appeal.

On appeal, Father argues that (1) the service plans
ordered by the Family Court did not include him and, due to his
incarceration until April 2009, he should not have been expected
to demonstrate the skills required by DHS until a service plan
was created upon his release, (2) DHS failed to use reasonable

_____

[1]    In a prior appeal and in prior orders issued in this case, we
referred to the child as "KB."  For consistency, we will refer to the child as
"KB" in the case caption and in our decision.

[2]    The Honorable Sherri-Ann L. Iha presided.

efforts to reunify him with KB because timely referrals for services were not provided, and (3) DHS failed to demonstrate by clear and convincing evidence that he failed to complete any recommended services prior to the termination of his parental rights in February 2010.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Father's points of error as follows:

At a termination of parental rights hearing for a child under the age of fourteen, the Family Court must determine whether there exists clear and convincing evidence that:

> (1)    A child's parent whose rights are subject to termination is not presently willing and able to provide the parent's child with a safe family home, even with the assistance of a service plan;
>
> (2)    It is not reasonably foreseeable that the child's parent whose rights are subject to termination will become willing and able to provide the child with a safe family home, even with the assistance of a service plan, within a reasonable period of time, which shall not exceed two years from the child's date of entry into foster care; [and]
>
> (3)    The proposed permanent plan is in the best interests of the child. In reaching this determination, the court shall:
>
>> (A)    Presume that it is in the best interests of the child to be promptly and permanently placed with responsible and competent substitute parents and family in a safe and secure home; and
>>
>> (B)    Give greater weight to the presumption that the permanent plan is in the child's best interest, the younger the child is upon the child's date of entry into foster care[.]

HAW. REV. STAT. § 587A-33(a)(1)-(3) (Supp. 2011). With a single exception discussed below, Father does not challenge the Family Court's relevant conclusions of law ("COL") and findings of fact ("FOF"). Instead, Father's arguments focus on DHS's alleged failure to provide every reasonable opportunity to help him "to succeed in remedying the problems that put his daughter, [KB], at

risk, as required by HRS [§] 587A-2."[3].

(1)  Father contends that he was not included in service plans or that those service plans did not recommend that he participate in services.  To the contrary, however, Father was included in service plans, dated July 11, 2008, September 25, 2008, and February 13, 2009.  Those plans ordered both Mother and Father to complete recommended services.  Father also contends that DHS should have developed a new service plan after his release from prison in April 2009, and that he should have only been required to fulfill a post-release service plan.  In support, Father argues that it was unjust to require that he fulfill, prior to his release, the pre-release service plans.  The record, however, establishes that Father acknowledged that he needed to complete the recommended services after release, and despite a ten-month window of post-release opportunity, he failed to do so.

(2)  Contrary to Father's contention, DHS exerted reasonable and active efforts to pursue family reunification, but Father's lack of compliance frustrated its efforts.  Father failed to provide current residential addresses and working telephone numbers.  Nonetheless, DHS social workers made repeated attempts to contact Father with limited success.  Father repeatedly missed appointments for a psychological evaluation and only completed the evaluation twenty days before the termination of parental rights hearing.  Yet Father acknowledged that the psychological evaluation was necessary to determine what other

---

[3]    HRS § 587A-2 provides in relevant part:

    Purpose; construction. . . . .

        . . . .

            . . . Every reasonable opportunity should be provided
    to help the child's legal custodian to succeed in remedying
    the problems that put the child at substantial risk of being
    harmed in the family home.  Each appropriate resource,
    public and private, family and friend, should be considered
    and used to maximize the legal custodian's potential for
    providing a safe family home for the child.

HAW. REV. STAT. § 587A-2 (Supp. 2011).

services were necessary for reunification with KB. Father made no effort to reschedule a failed 2011 home study visit. Although Father claims that he was referred to a closed drug testing facility, he also acknowledged that DHS referred him to another facility for subsequent substance abuse assessment and testing, but that he did not complete a substance abuse assessment.

(3) It was not clearly erroneous for the Family Court to find that Father failed to complete any recommended services prior to February 2010. Father admitted that a social worker informed him that the programs he completed in prison were not the same as DHS services. Father was released from prison in April 2009, but did not complete a psychological evaluation until November 2011. Furthermore, as stated above, Father admitted that he did not complete a substance abuse assessment, or a second home study. Father only attempted to complete services by taking parenting and domestic-violence classes after this case was previously on appeal in February 2010.

In his points of error, Father challenges COL 9, which determined that "[t]he legal mother, legal father, adjudicated, presumed or concerned natural father, as defined under HRS Chapter [587A], are not presently willing and able to provide the Children [sic] with a safe family home, even with the assistance of a service plan." Father contends that the COL is incorrect because DHS did not prove that he was not presently willing and able to provide KB with a safe family home with the assistance of a service plan that actually included him. As noted above, however, Father was included in the DHS service plans, he failed to satisfy those service plans, and that failure served, in part, as the basis for COL 9.

In light of Father's failure to establish that it was clearly erroneous for the Family Court to adopt COL 9, the fact that the other points raised are equally without merit, and the fact that Father raises no arguments contesting the Family Court's other relevant COLs and FOFs (in particular, COLs 10 and 12, and FOFs 81 and 86) that serve as the basis for the Order,

IT IS HEREBY ORDERED that the December 5, 2011 Order Terminating Parental Rights entered in the Family Court of the First Circuit is affirmed.

DATED: Honolulu, Hawai'i, December 20, 2012.

On the briefs:

Wilfred S. Tangonan
for Father-Appellant.

Mary Anne Magnier and
Jonathan M. Fujiyama,
Deputy Attorneys General,
for Petitioner-Appellee

Chief Judge

Associate Judge

Associate Judge